## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No.:** 25-cv-02618

GSS PROPERTIES, LLC, a North Carolina Limited Liability Company, GARRY SNOOK, SHARON SNOOK, and SOURWOOD, LLC, a Colorado Limited Liability Company

      Plaintiffs,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF PITKIN, and PATTI CLAPPER, FRANCIE JACOBER, KELLY MCNICHOLAS KURY, JEFFREY WOODRUFF, AND GREG POSCHMAN, in their official capacities only

      Defendants.

---

## COMPLAINT

---

Plaintiffs GSS Properties, LLC ("GSSP"), Garry and Sharon Snook (the "Snooks"), and Sourwood, LLC ("Sourwood") (collectively, the "Plaintiffs"), by and through their attorneys, Garfield & Hecht, P.C., state the following for their Complaint against Defendants the Board of County Commissioners of the County of Pitkin, and Patti Clapper, Francie Jacober, Kelly McNicholas Kury, Jeffrey Woodruff, and Greg Poschman, in their official capacities only (collectively, the "Defendants"):

### I.      PARTIES, JURISDICTION, AND VENUE

1.      GSSP is a prior owner of real property and the improvements thereon known as 1555 Nettle Creek Road (the "Nettle Creek Property").

2.      The Snooks own 100% of the membership interests in GSSP.

3.      Sourwood is a prior owner of the Nettle Creek Property.

4.      Improvements to the Nettle Creek Property include a main residence (the "Nettle Creek Residence") and a caretaker dwelling unit (the "Nettle Creek CDU").

5.      Defendant the Pitkin County Board of County Commissioners is a five-member elected board which includes Patti Clapper, Francie Jacober, Kelly McNicholas Kury, Jeffrey Woodruff, and Greg Poschman, in which all powers, duties and functions of Pitkin County are vested, including its legislative functions and the administration of the Pitkin County Land Use Code. The individual commissioners are joined in their official capacities only.

6.      Jurisdiction over this matter is appropriate pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction, 28 U.S.C. §§ 2201, *et seq.* (Declaratory judgment Act), and Rule 57 of the Federal Rules of Civil Procedure. This Court has Supplemental Jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

7.      Venue is proper under 28 U.S.C. § 1391 because the events giving rise to this action occurred in the District of Colorado, and because this action involves real property located in Pitkin County, Colorado.

## II.      GENERAL ALLEGATIONS

### A.      History of Regulation of Impact Fees in Colorado

8.      Colorado experienced dramatic population growth in the last decades of the twentieth century, almost doubling in size.

9.      Following a nationwide trend, many local governments in Colorado resorted to impact fees and development exactions to finance public infrastructure.

10.      Impact fees are legislatively enacted fees imposed on a broad category of property owners during the development process.

11.     Impact fees are generally collected at the time a building permit or certificate of occupancy is issued for a new building.

12.     An exaction is a requirement imposed on an *ad hoc* basis during the processing of a discretionary land use application as a condition of approval of the application.

13.     Previously, the lack of explicit authority from the Colorado General Assembly regarding whether a government body could impose such fees and whether such fees violated the Takings Clause of the U.S. Constitution led to piecemeal litigation and conflicting legal precedent around such issues in Colorado.

14.     In 1999, in order to provide uniformity and predictability surrounding exactions and impact fees, Colorado's General Assembly enacted the Regulatory Impairment of Property Rights Statute or Exactions Act—C.R.S. § 29-20-201 *et seq.*—attempting to codify the U.S. Supreme Court's holdings in *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987) and *Dolan v. City of Tigard*, 512 U.S. 374 (1994).

15.     The principal provision of the Exactions Act, C.R.S. § 29-20-203, codifying the holdings of *Nollan* and *Dolan* states:

> [i]n imposing conditions upon the granting of land-use approvals, no local government shall require an owner of private property to dedicate real property to the public, or pay money or provide services to a public entity in an amount that is determined on an individual and discretionary basis, *unless there is an essential nexus between the dedication or payment and a legitimate local government interest, and the dedication or payment is roughly proportional both in nature and extent to the impact of the proposed use or development of such property.* This section shall not apply to any legislatively formulated assessment, fee or charge that is imposed on a broad class of property owners by a local government (emphasis added).

16.     The United States Supreme Court has also adopted the Unconstitutional Conditions Doctrine which provides that local governments cannot condition a person's receipt of a governmental benefit on the waiver of a constitutional right.

17.     In the context of development and building permit applications, the Unconstitutional Conditions Doctrine vindicates the Constitution's 5th Amendment right to just compensation for property when the government collects an improperly calculated impact fee when an owner applies for a building permit.

18.     In 2001, the Colorado General Assembly amended the Local Government Land Use Control Enabling Act or Impact Fee Act—C.R.S. § 29-20-101 *et seq.*—to add a section that authorizes the use of impact fees but establishes limitations upon the use of such fees.

19.     Under the Impact Fee Act, fees may only be imposed to fund the cost of "capital facilities," defined as

> any improvement or facility that: (a) [i]s directly related to any service that a local government or a fire and emergency services provider is authorized to provide; (b) [h]as an estimate useful life of five years or longer; and (c) is required by the charter or general policy of a local government or fire and emergency services provider pursuant to a resolution or ordinance. C.R.S. § 29-20-104.5(4)(a)-(c).

20.     To set the fees, a local government must first quantify the reasonable impacts of proposed development on existing capital facilities and establish the impact fee or development charge through generally applicable legislation at a level no greater than necessary to defray such impacts directly related to proposed development. No impact fee or other similar development charge shall be imposed to remedy any deficiency in capital facilities that exists without regard to the proposed development. C.R.S. § 29-20-104.5(2).

**B.      The Adoption of Pitkin County's Employee Housing Impact Fees**

4

21.      Defendant first adopted code provisions requiring the payment of an employee housing impact fee as a condition of the issuance of a building permit in 2005.

22.      At that time, the calculation of employee housing impact fees was based on what was known as the cost of construction methodology ("Construction Cost Methodology").

23.      In short, the Construction Cost Methodology estimated the number of full-time employees generated by construction and then multiplied that number by the cost to construct employee housing for one employee.

24.      Further, under the prior version of the Pitkin County Land Use Code, no employee housing impact fees were charged for remodels that did not increase the size of the residential structure. This exemption did not apply to any expansion of an existing structure. Therefore, only that portion of the remodel that increased the size of the existing residential structure was charged an employee housing impact fee.

25.      Stated another way, under the prior version, if an addition was built, the employee housing impact fee charged to an owner would be calculated only on the square footage of the addition, not the square footage of the preexisting structure.

26.      The prior version of the Pitkin County Land Use Code implicitly recognized that a remodel of or addition to an existing residential structure did not generate the same construction costs or use and maintenance costs that new construction of a residential structure generates.

Under that prior version of the Pitkin County Land Use Code, and under the current version, when a property contains multiple residential structures, all of the residential structures were considered as one structure for fee calculation purposes. As a result, if a homeowner developed and constructed an accessory unit to an existing residence on a single parcel, the development impact

5

fee would be calculated based on the total square footage for both the new accessory unit and the existing structure even though the existing structure was not generating any new employees or increasing the operation and maintenance costs for the existing structure.

27.    Additionally, under both the prior version of the Pitkin County Land Use Code and the 2020 Ordinance, the calculation of the employee housing impact fee depends upon whether the property will be "Locally-Occupied" or "Non-Locally Occupied", which results in the owner of Non-Locally Occupied properties paying significantly higher impact fees.

28.    Under the version of the Pitkin County Land Use Code adopted pursuant to the 2020 Ordinance, Locally Occupied properties are those properties occupied by a "Pitkin County Resident" and such person's family who must represent and agree: (a) to occupy the property as such person's principal place of residence; (b) to not engage in any business activity on the property, other than that permitted in that zone district or by applicable ordinance; (c) to continue meeting the residency requirements; and (d) to notify Pitkin County of such person's ceasing to occupy the property as such person's principal residence.

29.    In the event a Locally Occupied property becomes Non-Locally Occupied (*i.e.* the property is no longer the primary residence of a Pitkin County Resident) the then current owner of the property has to pay the full amount of the impact fee associated with Non-Locally Occupied properties regardless of when the transition occurs even though a subsequent non-local owner was not involved in the remodel or addition that is the subject of the impact fee and did not generate any employment or any direct costs associated with the remodel or addition.

3265220.2

30.     Moreover, the owner of the property at the time the Locally-Occupied impact fee is paid has to personally guarantee the Non-Locally Occupied fee will be paid at the time the property becomes Non-Locally Occupied.

31.     As alluded to above, in addition, to amending the "Credits and Exemption" provisions as stated above, the 2020 Ordinance also significantly changed how the employee housing impact fees are calculated. Specifically, Defendant adopted the Affordability Gap Methodology. Under this new methodology, fees would be calculated by multiplying the purported full-time employees generated by construction by the "gap" between the cost of real property affordable to someone earning the median income in Pitkin County and the average cost of a free market property in Pitkin County. The change in methodology to the Affordable Gap Methodology exponentially increased the schedule of values for calculating a development impact fee from $44,487.00 for each full-time employee to $115,294.00 for each full-time employee – nearly a 300% increase due to the change of methodology.

32.     The increased fee is not based on a quantification of the cost of constructing affordable housing units for the number of generated employees as required by the Impact Fee Act.

33.     Further, there is no nexus between the cost of an employee purchasing a house in the free market in calculating the development impact fee rather than the costs of constructing the affordable housing unit. There is no affordable housing program in Pitkin County where a qualified Pitkin County resident employee is eligible or receives a monetary subsidy from Pitkin County measured by the affordability gap between the medium income for Pitkin County employees and the price of free market residential properties. Instead, Pitkin County and the City of Aspen

(through the Aspen Pitkin County Housing Authority) purchases and constructs affordable housing units for sale or rent to qualified Pitkin County employees funded in part by the development impact fees that are imposed to cover the cost of constructing affordable housing capital improvements.

34.    As a result, the amount of the development impact fee based on the Affordable Gap Methodology is set at a level greater than necessary to defray the cost of constructing affordable housing directly related to the number of employees generated by the proposed development.

Additionally, the development impact fee based on the Affordable Gap Methodology is intended to remedy deficiencies in capital facilities in Pitkin County's affordable housing stock without regard to the actual impact of the development of the CDU in 2010.

## C.    History of the Nettle Creek Property

35.    GSSP acquired the Nettle Creek Property on October 5, 1999.

36.    The Nettle Creek Residence was originally constructed in or around 2000. The construction of the Nettle Creek Residence predated Pitkin County's requirement that a employee housing impact fee be paid as a condition of the issuance of a building permit.

37.    The total heated floor area of the Nettle Creek Residence is around 4,771 square feet.

38.    In or around 2010, GSSP received approval from Defendant to construct the Nettle Creek CDU on the Nettle Creek Property.

39.    In connection therewith, GSSP obtained building permit for the construction of the Nettle Creek CDU, which has a total heated floor area of 1,855 square feet (the "CDU Building Permit").

40.     Defendant conditioned its issuing the CDU Building Permit on GSSP's paying an employee housing impact fee in the amount of $5,326.00 ("EHIF").

41.     The EHIF was calculated based on the then existing Cost of Construction Methodology.

42.     Further, rather than being calculated based on the square footage of the CDU alone, the EHIF was calculated based on the heated square footage (i.e. heated floor area) of both the Nettle Creek CDU and the preexisting Nettle Creek Residence, which totaled 6,626 square feet.

43.     At the time, the Snooks were full-time residents of Pitkin County. Thus, Defendant only required payment of the EHIF amount for a Locally-Occupied property.

44.     However, Defendant required GSSP and the Snooks to enter into a Covenant Agreement for the Occupancy and Resale of 1555 Nettle Creek Road ("Covenant Agreement"), which, among other things, required the payment of the full EHIF amount for a Non-Locally Occupied property if the Snooks ceased to be residents of Pitkin County or if the Property was sold to someone not a resident of Pitkin County. The Covenant Agreement provided that GSSP and the Snooks would be jointly and severally liable for the payment of the full EHIF amount for a Non-Locally Occupied property if the Snooks ceased to be residence of Pitkin County or if the property was sold to someone not a resident of Pitkin County.

45.     Notably, at the time the EHIF was paid and the Covenant Agreement was signed the difference between the payment required for Locally-Occupied and Non-Locally Occupied properties under the Cost of Construction Methodology was relatively minimal.

46.     By way of example, the Covenant Agreement included the following hypothetical:

> For example, if at the time title to the Property vests in a individual who is not a Qualified Resident the then-current

> EHMF reflecting mitigation for second home use is $25,000.00, the EHMF Balance owed to the County would be $19,674.00 (i.e., $25,000.00 less the Current EHMF Payment of $5,326.00.) Upon payment of the EHMF Balance to the County, this Agreement shall terminate and the County shall execute and deliver to Garry, Sharon and GSSP such documents in recordable form as Garry, Sharon and GSSP may require to evidence the termination of this Agreement and the release of the Property from the provisions hereof.

47.     Since then, the amount of the employee housing mitigation fees charged by Defendant under the Affordability Gap Methodology has grown exponentially especially with respect to the discriminatory fee charged in connection with a Non-Locally Occupied Property.

48.     GSSP sold the Nettle Creek Property to Sourwood on or around July 22, 2025. Sourwood's members are also residents of Pitkin County.

49.     Sourwood then sold the Nettle Creek Property to another entity that same day. The entity to which the Nettle Creek Property was sold was controlled by non-residents. As such, as a condition to close, the entity buying the Nettle Creek Property required Sourwood to pay the additional impact fee due pursuant to the Covenant Agreement.

50.     That additional impact fee, which Sourwood paid under protest pursuant to the Impact Fee Act on July 24, 2025, totaled $575,361.09.

51.     If only the square footage of the new CDU constructed in 2010 was considered in calculating the EHIF Balance using the Affordable Gap Methodology, the amount of the EHIF Balance would be significantly reduced to $100,793.48.

52.     If only the square footage of the new CDU constructed in 2010 was considered in calculating the EHIF Balance using the cost of constructing methodology in effect in 2020, the amount of the EHIF Balance would be further reduced to $6,806.11.

10

### III.   FIRST CLAIM FOR RELIEF
**(Declaratory Judgment pursuant to Fed. R. Civ. P. 57)**

53.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

54.     The employee housing impact fees imposed on Plaintiffs as a condition of obtaining the issuance of the CDU Building Permit constitutes an "impact fee" as defined in C.R.S. § 29–20–104.5.

55.     Pitkin County Determination 04-2008 and Resolution No. 083-2008 approving the development of the CDU and imposing an EHIF constitutes "development permits" as defined in C.R.S. § 29–20–103.

56.     An actual controversy exists between Plaintiffs and Defendant within the jurisdiction of this Court regarding the employee housing impact fees imposed by Pitkin County as a condition of approving and issuing the CDU Building Permit.

57.     Plaintiffs have standing under C.R.S. § 29–20–104.5(7) to file an action for declaratory judgment to determine whether the employee housing impact fees comply with the provisions of C.R.S. § 29–20–104.5.

58.     Plaintiffs seek a declaration of their rights relating to the employee housing impact fees imposed by Defendant as a condition of approving and issuing the CDU Building Permit:

(a)     The employee housing impact fee imposed is improperly calculated under C.R.S. § 29–20–104.5;

(b)     The employee housing impact fee was imposed to remedy alleged deficiencies in capital facilities by Defendant without regard to the reasonable amount necessary to defray the impacts directly related to the proposed development;

(c)    Defendant should refund to Plaintiffs the amount of the employee housing impact fee wrongfully imposed and collected with interest thereon from the date collected;

(d)    Judgment is entered in favor of the Plaintiffs in an amount equal to the wrongly charged and collected employee housing impact fee with interest thereon from the date collected from the Plaintiffs.

## IV.    SECOND CLAIM FOR RELIEF
### (C.R.C.P. 106(a)(4))

59.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

60.    Plaintiffs paid the employee housing impact fee and proceeding with the sale of the Nettle Creek Property without prejudice to their right to challenge the employee housing impact fee under C.R.C.P. 106 pursuant to C.R.S. § 29–20–104.5(7).

61.    Defendant exceeded its jurisdiction, abused its discretion and acted in an arbitrary and capricious manner by:

(a)    Imposing an employee housing impact fee without regard to the reasonable amount necessary to defray the impacts directly related to the underlying development.

(b)    Improperly calculating an employee housing impact fee that does not satisfy the requirement that the Pitkin County's impact fees have an essential nexus and rough proportionality to the impacts of the underlying development.

62.    Plaintiffs are adversely affected and have no plain, adequate or speedy remedy otherwise provided by law.

## V.    ALTERNATIVE THIRD CLAIM FOR RELIEF
### (C.R.C.P. 106(a)(2))

63.      Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

64.      C.R.S. § 29–20–104.5(1) does not specify whether a homeowner's remedy providing for a refund of the wrongfully charged development impact fee is a *certiorari* claim under C.R.C.P. 106(a)(4) or a *mandamus* claim under C.R.C.P. 106(a)(2). The issuance of a building permit by a building code official does not include many of the typical procedures inherent in a quasi-judicial decision reviewed under C.R.C.P. 106(a)(4), including notice to affected citizens, a public hearing, and a transcribed record. Moreover, a building official generally does not have discretion to withhold issuance of a building permit if the permittee complies with all aspects of the pertinent building and land use codes. The Building Department is also generally not considered a quasi-judicial body.

65.      On the other hand, it is well established that the proper remedy to a homeowner if a building official wrongfully withholds the issuance of a building permit is *mandamus* under C.R.C.P. 106(a)(2). Accordingly, Plaintiffs are filing an alternative *mandamus* claim under C.R.C.P. 106(a)(2) in the event that the Court determines that the proper remedy under C.R.C.P. 106 referenced in C.R.S. § 29–20–104.5(7) is a *mandamus* claim under C.R.C.P. 106(a)(2).

66.      Under C.R.S. § 29–20–104.5(1) no impact fee or other similar development charge shall be imposed by Defendant except pursuant to a schedule that is (a) legislatively adopted; (b) generally applicable to a broad class of property; and (c) intended to defray the projected impacts on capital facilities caused by the proposed development.

67.     Defendant is required to quantify the reasonable impacts of proposed development on existing capital facilities and establish the impact fee or other development charge at a level no greater than necessary to raise such impacts directly related to the proposed development.

68.     Defendant is prohibited from withholding the ministerial issuance of a building permit conditioned on the payment of a development impact fee or similar development charge that does not comply with C.R.S. § 29–20–104.5.

69.     *Mandamus* under C.R.C.P. 106(a)(2) is the proper remedy to compel a local government to ministerially issue a building permit if the permit application complies with the pertinent building and zoning codes if the local government improperly conditions the issuance of the building permit on the payment of a development impact fee which does not comply with C.R.S. § 29–20–104.5.

70.     C.R.S. § 29–20–104.5(7) provides a procedure which allows an applicant for a development permit who believes that a local government has improperly applied fees adopted pursuant to the Impact Fee Act to pay the fee or charge imposed without prejudice to the applicant's right to challenge the fee imposed under C.R.C.P. 106(a)(2) because the relief sought is to compel a governmental body to perform an act which the law specially enjoins as a duty resulting from an office or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such governmental body. The relief available includes any damages sustained, measured by the amount of the improperly applied fees plus pre-judgment interest.

71.     Under C.R.S. 29–20–104.5(7), the damages sustained by the Plaintiffs include the amount of the impact fee or charge wrongfully collected with interest thereon from the date collected.

72.     Plaintiffs have paid the employee housing impact fee and proceeded with the sale of the Nettle Creek Property without prejudice to their right to challenge the employee housing impact fee under C.R.C.P. 106(a)(2) pursuant to C.R.S. § 29–20–104.5(7).

### IX.     SEVENTH CLAIM FOR RELIEF
**(Substantive Due Process Violation Pursuant to 42 U.S.C. § 1983)**

73.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

74.     The imposition of affordable housing impact fees based on preexisting heated square footage regardless of the actual construction taking place is not rationally related to any legitimate government purpose.

75.     As a result, the provisions of the Pitkin County Land Use Code imposing such fees are void and Plaintiffs are entitled to damages in an amount to be proven at trial and well as its reasonably incurred attorneys' fees and costs.

### X.     EIGHTH CLAIM FOR RELIEF
**(Violation of the Dormant Commerce Clause)**

76.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

77.     Defendant was acting under color of law when it adopted the 2020 Ordinance amending the Pitkin County Land Use Code and previous provisions related to the imposition of employee housing impact fees.

3265220.2

78.     The Pitkin County Land Use Code provisions related to the imposition of employee housing impact fees expressly discriminate against interstate commerce in violation of the Commerce Clause of the United States Constitution by levying higher impact fees on "Non-Locally Owned" properties than "Locally Owned" properties.

79.     Because such provisions are discriminatory on their face, they are *per se* invalid.

## XI.     NINTH CLAIM FOR RELIEF
### (Taking Under the Fifth Amendment of the United States Constitution and 42 U.S.C. § 1983)

80.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

81.     The Fifth Amendment of the United States guarantees protection against any taking of private property, even for a purpose wholly public in nature, without just compensation.

82.     GSSP and Sourwood are the previous owners of the Nettle Creek Property and possessed the right to be free of any governmental taking of their private property without just compensation.

83.     Both the United States and Colorado Supreme Courts have recognized that because Defendant's regulatory action significantly restricts the use of the property, a fact-specific inquiry is warranted to determine whether Defendant's conduct described above (a) economically burdens the owner of the property, (b) such that the nature of the action constitutes a governmental taking requiring just compensation.

84.     The fact-based inquiry requires the application of a balancing test accounting for (i) the character of Defendant's conduct, (ii) the economic impact of the regulation on Plaintiffs, and (iii) the extent to which the regulation has interfered with Plaintiffs' economic expectations.

3265220.2

85.    Defendant's adoption of the provisions of the Pitkin County Land Use Code alloting its imposition of the impact fees as a condition of the issuance of a building permit regardless of the fact that the fees are not reasonable calculated to defray the cost of the impacts the development will have on capital facilities has caused Plaintiffs to suffer substantial negative economic impacts and interfered with Plaintiffs' expectations for its use of the Nettle Creek Property.

## XII.    **PRAYER FOR RELIEF**

1.    Wherefore, Plaintiffs request that this Court enter judgment in favor of the Plaintiffs and against the Defendants for the following relief:

(a)    On Plaintiffs' First Claim for Relief for Declaratory Relief pursuant to Fed. R. Civ. P. 57 declaring that:

i.    The EHIF imposed is improperly calculated under C.R.S. § 29–20–104.5;

ii.    Defendant should refund to Plaintiffs the amount of the employee housing impact fee wrongfully imposed and collected with interest thereon from the date collected; and therefore,

iii.    Judgment is entered in favor of the Plaintiffs in an amount equal to the wrongly charged and collected employee housing impact fee with interest thereon from the date collected from the Plaintiffs; and,

(b)    On Plaintiffs' Second Claim for Relief, entering judgment declaring that Defendant exceeded its jurisdiction and abused its discretion and acted in an arbitrary and

17

capricious manner under C.R.C.P. 106(a)(4) by improperly imposing an employee housing impact fee which was not correctly calculated for the construction of the CDU.

(c)    On Plaintiffs' Third Claim for Relief, awarding damages sustained by Plaintiffs including the amount of the employee housing impact fee wrongfully charged and collected with interest thereon from the date collected under C.R.S. 29–20–104.5(7).

(d)    On Plaintiffs' Seventh Claim for Relief entering an order finding that Defendants adoption of the provisions of the Pitkin County Land Use Code related to the imposition of employee housing impact fees violated the public's right to substantive due process pursuant to the 14th Amendment to the United States Constitution and is void *ab initio* and awarding Plaintiff its damages proven at trial.

(e)    On Plaintiffs' Eighth Claim for Relief entering an order finding that Pitkin County's Land Use Code violates the dormant commerce clause and are therefore void *ab initio.*

(f)    On Plaintiffs' Ninth Claim for Relief entering an order finding that the imposition of the employee mitigation impact fee as a condition of issuing the CDU Building Permit constitutes an unlawful regulatory taking.

(g)    On all of Plaintiffs' claims for relief, judgment awarding Plaintiffs its attorneys' fees and costs and such further relief as the Court deems just and equitable.

Dated this 20th day of August 2025.　　　　GARFIELD & HECHT, P.C.

　　　　　　　　　　　　　　　　　　　　　*/s/ David L. Lenyo*
　　　　　　　　　　　　　　　　　　　　　David L. Lenyo, #14178
　　　　　　　　　　　　　　　　　　　　　Macklin Henderson, #54212
　　　　　　　　　　　　　　　　　　　　　625 East Hyman Avenue, Suite 201
　　　　　　　　　　　　　　　　　　　　　Aspen, Colorado 81611
　　　　　　　　　　　　　　　　　　　　　Telephone: (970) 925-1936
　　　　　　　　　　　　　　　　　　　　　Facsimile: (970) 925-3008
　　　　　　　　　　　　　　　　　　　　　E-mail: dlenyo@garfieldhecht.com
　　　　　　　　　　　　　　　　　　　　　E-mail: mhenderson@garfieldhecht.com
　　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiffs*

19